UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BLACKBURN & ASSOCIATES CONSTRUCTION AND DEVELOPMENT CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> KENNETH CARMAN (SR.), dba VERDI ELECTRIC CO., <br><br> Defendant. | 3:06-CV-00573-LRH-VPC <br><br> ORDER |

Before the court is Plaintiff Blackburn and Associates and Development Co. Inc.'s ("Blackburn") Renewed Motion for Summary Judgment (#34[1]).  Because Blackburn has shown as a matter of law that Defendant Kenneth Carman, doing business as Verdi Electric Co. ("Verdi"), breached the parties' construction subcontract, the court grants partial summary judgment in Blackburn's favor.

I.  **Factual and Procedural History**

Plaintiff Blackburn was hired as a general contractor to construct a chapel in Reno, Nevada ("Project").  In or about April 2005, Blackburn entered into a subcontract ("Agreement") with Verdi by which Verdi agreed to furnish and install much of the electrical work for the Project.

---

[1] Refers to the court's docket

Verdi agreed to perform its duties under the Agreement for $156,038.55. The Agreement was later modified by a single $2,135.35 change order for an adjusted total of $158,173.90.

At this point, the parties offer different versions of the facts. Verdi presents evidence that in June 2005, the Project was stalled. Therefore Verdi was forced to wait to proceed on its work until the beginning of August 2005. While work resumed in August, the project again stalled at the end of that month. This work stoppage continued until the beginning of September 2005. Blackburn did not modify the Agreement's progress schedule at that time. Also in September 2005, Blackburn failed to make a required payment to Verdi. Following repeated requests for payment, Verdi learned that funds allocated to Verdi had instead been paid to an excavation company. Upon learning of Blackburn's failure to pay, Verdi stopped work on the Project.

Blackburn, by contrast, presents evidence that at various times over the course of Verdi's work, Blackburn's president, David Holmes, requested that Verdi increase the number of workers on its crew so as to keep up with the Agreement's schedule. Verdi, however, failed to comply with these requests, and, as a result, Verdi's work fell behind schedule.

By mid-March 2006, Blackburn had paid Verdi $92,532.39 under the Agreement, which left an unpaid balance of $65,641.51. At that time Holmes became concerned that this balance would be inadequate to cover the remaining work under the Agreement. Verdi assured Holmes that it had the ability and financial capacity to complete the Agreement.

In late-April 2006, Blackburn learned that Verdi owed more than $66,000 to Grove Madsen Industries for Project materials. This amount exceeded the balance still owed to Verdi under the Agreement. Grove Madsen eventually filed a mechanics lien against the Project property, which Blackburn settled directly with Grove Madsen.

On May 4, 2006, Holmes sent a letter to Verdi informing it that all future payments would be joint checks to Verdi's suppliers. Blackburn also stated that it would not make payments to Verdi beyond the remaining balance under the Agreement. The letter also demanded that Verdi

increase its workforce, which Verdi did not do.

On July 13, 2006, Holmes sent another letter to Verdi, notifying Verdi that it was in breach of the Agreement and informing Verdi it had a right to cure. After Verdi did not cure, Blackburn took steps to supplement Verdi's workforce with other subcontractors. However, by that time, Verdi had left the project entirely. The replacement subcontractors completed Verdi's work and corrected defects discovered in Verdi's work.

Blackburn ultimately paid $295,849.08 to complete the work within the scope of the Agreement. This amount includes monies paid to Verdi, Grove Madsen, and other suppliers, as well as payments to the supplemental and replacement subcontractors hired to complete and repair Verdi's work. The amount Blackburn ultimately paid for the work within the scope of the Agreement exceeded the amount Blackburn agreed to pay Verdi by $137,675.18.

On October 27, 2006, Blackburn filed this suit against Verdi, asserting a claim for breach of contract and another claim for attorneys' fees and costs. On June 7, 2007, Blackburn filed a motion for summary judgment. (#19.) On November 13, 2007, this court denied the motion for summary judgment without prejudice. (#28.) On April 25, 2008, Blackburn filed the present renewed motion for summary judgment. (#34.)

**II.    Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along

with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

In order to successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

In support of its motion for summary judgment, Blackburn argues that there is no genuine issue of material fact with respect to whether Verdi breached the Agreement. The court agrees.

The Agreement provides that "[u]pon payment by Blackburn & Associates Construction & Development Co. Inc., . . . the Subcontractor shall promptly pay its subcontractors and suppliers the amounts to which they are entitled." (Agreement, Clause 8.9 (#36) Ex. B at 24.) The Agreement further provides in Clause 10.1.1 that

> [i]f the Subcontractor fails within three (3) days after written notification to commence and continue satisfactory correction of the default with diligence and promptness, then the Blackburn & Associates Construction & Development Co., Inc., without prejudice

4

> to any other rights or remedies, shall have the right to any or all of the following remedies:
>
> .1 supply workers, materials, equipment and facilities as the Blackburn & Associates Construction & Development Co., Inc., deems necessary for the completion of the Subcontract Work or any part which the Subcontractor has failed to complete or perform after written notification, and charge the cost, including reasonable overhead, profit, attorneys' fees, costs and expenses to the Subcontractor;
>
> .2 contract with one or more additional contractors to perform such part of the Subcontract Work as the Blackburn & Associates Construction & Development Co., Inc., determines will provide the most expeditious completion of the Work, and charge the cost to the Subcontractor as provided under Clause 10.1.1.1 . . . .

As discussed previously, in late-April 2006, Blackburn learned that Verdi owed more than $66,000 to Grove Madsen Industries for Project materials, which exceeded the balance still owed to Verdi under the Agreement. Madsen filed a mechanics lien against the Project's property, which Blackburn settled directly with Grove Madsen. On July 13, 2006, Holmes sent a letter to Verdi, notifying Verdi that it was in breach of the Agreement and informing Verdi that it had a right to cure. This letter satisfied the Agreement's notice requirement by allowing Verdi three days to commence its cure of the default.

After Verdi did not cure, Blackburn was permitted by the Agreement to supplement Verdi's workforce with other subcontractors. Blackburn has therefore presented uncontroverted evidence that Verdi breached the agreement by failing to pay its suppliers.[2] Blackburn has also shown that its hiring of other subcontractors was proper under the Agreement.

With respect to damages, Blackburn presents evidence that it expended $295,849.08 to complete Verdi's work under the Agreement. This amount is $137,675.18 more than the

---

[2] Verdi does not contend that Blackburn failed to meet a condition precedent to Verdi's duty to pay its suppliers when, according to Verdi, Blackburn failed to make a required payment in September 2005. Even if Verdi had made such an argument, the court would reject it. Verdi acknowledges that Blackburn continued to make progress payments through December 2005. (Carman Dep. (#35) at 43:22-23, 48:5-7.) In light of such uncontroverted evidence, the court finds that Blackburn met any condition precedent to Verdi's duties to pay its suppliers.

$158,173.90 Verdi agreed it would receive under the Agreement. Because Verdi does not dispute any of these figures, Blackburn has shown it is entitled to $137,675.18 as a matter of law.

In opposition to Blackburn's motion for summary judgment, Verdi offers two arguments, neither of which have merit. Verdi first argues that Blackburn failed to render payment to Verdi in September 2005, so Verdi was entitled under Clause 8.2.6 of the Agreement[3] to stop work on the Project.

Verdi is correct that Blackburn's alleged failure to make a required payment would have entitled Verdi to stop work on the Project. As stated by the Restatement (Second) of Contracts, "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237 (1981).

The inquiry, however, does not stop there. Blackburn presents uncontroverted evidence that even after it allegedly failed to make a required payment, Verdi continued to accept further payment from Blackburn. Carman testified in his deposition that "my payments were stopped by Blackburn in December [2005], the end of December." (Carman Dep. (#35) at 43:22-23, 48:5-7.) This fact is very significant because by accepting further performance from Blackburn, Verdi waived its right to stop work on the project and sue Blackburn for total breach of the Agreement. *See* Restatement

---

[3] Section 8.2.6 of the Agreement provides the following in pertinent part:

> If the Blackburn & Associates Construction & Development Co. Inc., has received payment from the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints and if for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Blackburn & Associates Construction & Development Co., Inc., within seven (7) days after the date such payment is due, as defined in Subparagraph 8.2.5., the Subcontractor, upon giving seven (7) days' written notice to the Blackburn & Associates Construction & Development Co., Inc., . . . and without prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to the Subcontractor has been received.

(Agreement (#36) Ex. B at 20.)

6

(Second) of Contracts § 246(1) (1981) ("[A]n obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to know of the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence . . . ."); *see also Longenecker v. Brommer*, 368 P.2d 900, 903 (Wash. 1962) ("[W]ith full knowledge of the breach, the appellant continued to accept the benefit of respondent's performance and did not assert the breach as a ground for rescission of the contract until this action was instituted.  Such conduct constituted a waiver of the right of rescission."). Thus, once Verdi elected not to sue Blackburn for a material breach, Verdi's duties under the Agreement sprang back to life.

Verdi's second argument in opposition to summary judgment suffers from the same defect as its first.  Verdi contends that, in August 2005, Blackburn breached the subcontract by failing to satisfy the schedule modification process mandated by the Agreement.  Thus, Verdi argues, no claim against Verdi exists.  Again, Verdi's argument is to no avail.  Even if Blackburn's alleged failure to modify the progress schedule constituted a material breach, Verdi waived its right to suspend or stop performance when it elected to accept further payment from Blackburn.  Verdi has therefore failed to present any genuine issue of material fact in opposition to Blackburn's motion for summary judgment.

Finally, as Blackburn argues, the Agreement provides for an award of attorneys' fees in the event of a breach. (Agreement, Clause 10.1.1 (#36) Ex. B at 26.)  As Blackburn notes, however, some time has elapsed from the filing of the present motion for summary judgment.  Therefore, the court will allow Blackburn to supplement its motion for summary judgment with any evidence concerning attorneys' fees incurred as a result of Verdi's breach.  Moreover, because the court has not entered final judgment in this case, the court will not yet calculate Blackburn's final award of damages so that the court may calculate the proper amount of prejudgment interest.

IT IS THEREFORE ORDERED that Blackburn's Renewed Motion for Summary Judgment

(#34) is GRANTED.  Pursuant to Federal Rule of Civil Procedure 56(d), the court finds that the following facts are not genuinely at issue: (1) Verdi breached Clause 8.9 of the Agreement by failing to pay one of its suppliers; and (2) Blackburn is entitled to at least $137,675.18 for the monies it expended to complete Verdi's work under the Agreement.

IT IS SO ORDERED.

DATED this 8th day of January, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE